DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The Summit County Court of Common Pleas dismissed the negligence claims brought by Tina and John Robertson against Dr. Ralph McCue and the Summit Hand Center ("SHC") following a jury verdict in favor of Dr. McCue and SHC.[1] The Robertsons have appealed.
The Robertsons have asserted that the trial court erred by (1) refusing to admit their medical illustration into evidence; (2) refusing to permit them to introduce photographic evidence; (3) refusing to permit the use of a treatise for purposes of cross examination; and (4) displaying improper bias against the plaintiffs.[2]
 I
Dr. McCue performed carpal tunnel release surgery on both of Tina Robertson's wrists. The surgery on the right wrist was uneventful. Tina Robertson had an anomalous nerve arrangement in her left wrist. The unusual arrangement is commonly referred to as a high division of the median nerve, and is a recognized anomaly. This anomaly results in two distinct branches of the median nerve at the site of surgery rather than the more common single branch. In excising the tissue that helps relieve the congestion in the carpal tunnel, Dr. McCue also excised a portion of the second nerve branch. Because that nerve was no longer intact, Tina Robertson lost the feeling in her ring finger and in a portion of her middle finger. Once the error was discovered, Dr. McCue grafted a nerve from one of her legs into her wrist in order to restore the nerve pathway. That surgery was not successful, and Tina Robertson continues to have diminished grip in her left hand, constant pain, and hypersensitivity to touch. In addition, the second surgery left her without feeling in portions of her leg.
At trial, the Robertsons contended that once Dr. McCue isolated the single nerve he expected to encounter he cut out the synovial tissue without looking for a second nerve at the surgical site. Because the high division of the median nerve is a recognized anomaly, the Robertsons contended that he had a duty to look for it at the time of surgery. If he failed to do so, he acted negligently when he cut out the portion of the second branch of the nerve.
Dr. McCue countered that the synovial tissue was inflamed and swollen and that because of this the second nerve was hidden. According to Dr. McCue, the removal of the nerve was unfortunate, but it did not result from his breach of a duty to look for the anomaly.
Each party prepared one or more diagrams in order to demonstrate what it believed happened during surgery. The Robertsons' diagram showed both branches of the nerve as clearly visible; Dr. McCue's showed the second branch of the nerve as at least partially hidden. Both diagrams were used during the presentation of the case to the jury. An expert witness described Dr. McCue's diagram as an accurate representation of carpal tunnel release surgery. The Robertsons' was not similarly described. The trial court admitted Dr. McCue's diagram into evidence, but ordered the removal of several phrases on the diagram that described the nerve as hidden and the tissue as inflamed. In response to an objection by Dr. McCue, the court rejected the Robertsons' diagram because it had not been authenticated. The court offered to permit the Robertsons to reopen their case in order to authenticate the diagram, but they did not take advantage of the opportunity.
The court also sustained an objection to the Robertsons' questioning of their witness about the similarity of a photograph to Tina Robertson's surgery. Although it is likely that the photograph was of a carpal tunnel release operation that had recently been performed by the Robertsons' expert, all that had been established at the time the bald objection was made was that a picture existed of a recent surgery, that the picture had been sent to the Robertsons' attorney, and that he had brought the picture to the courtroom. The Robertsons did not make any further attempts to determine why the questioning about the photograph was halted or to have the photograph admitted. They also did not proffer the photograph or the testimony that they expected their witness to give regarding the photograph. Among the exhibits that were admitted was an article on carpal tunnel release surgery. Numerous diagrams and photographs are contained in that article. At least three of the photographs in the article depict a high division of the median nerve.
On several occasions during the trial, the court directly questioned witnesses. Generally, the court questioning occurred in response to a party objection. The questions asked by the court generally (1) limited the question that had drawn an objection to one which was permitted and non-repetitive; (2) elicited information the court needed to determine the validity of an objection; or (3) informed the witnesses about the limits on the answers they were permitted to give. Although the questioning by the court occurred more frequently during questioning by the Robertsons than during questioning by Dr. McCue, it did occur during both.
 II
A. Admission and Exclusion of "Artistic Diagrams"
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Prior to admission, evidence must be identified in a manner "sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The judgment of the trial court will be reversed only if the reviewing court finds that the trial court clearly abused its discretion by excluding the proffered evidence, and that the exclusion materially prejudiced the complaining party. State v. Hymore (1967), 9 Ohio St.2d 122,128, certiorari denied (1968), 390 U.S. 1024, 20 L.Ed.2d 281. To find an abuse of discretion, the reviewing court must find that the trial court's actions were "unreasonable, arbitrary, or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
The evidence at issue here is an "artistic diagram" which purportedly demonstrated both the general anatomic structure of the wrist and the visibility of the inadvertently excised nerve. Although the Robertsons used the diagram during the presentation of their case, none of their witnesses testified that it was an accurate representation of the general anatomic structure of the wrist. After sustaining an objection to the diagram, the court indicated that the Robertsons could reopen their case in order to lay the foundation for admission of the exhibit. They did not take advantage of the opportunity.
A similar exhibit prepared by McCue was admitted. Dr. Stephen Lacey testified that the artistic diagram accurately depicted what happens during a carpal tunnel release on the left hand. When the Robertsons objected to the argumentative nature of the exhibit, the trial court ordered words such as "hidden" and "inflamed" that appeared on the diagram be taken off the diagram.
The Robertsons have asserted that it is unfair that there were no "representative pictures or drawings of any kind present in the jury room" other than Dr. McCue's exhibit. The record does not support this assertion. The court admitted into evidence an article from the January 1997 Journal of Hand Surgery which contained numerous artistic and photographic renderings of the anatomy of the wrist. The article contains at least three photographs of carpal tunnel release surgery in which there is a high division of the median nerve. In all three photographs both branches of the median nerve are clearly visible at the surgical site. The record does not contain any subsequent indication that this exhibit was withheld from the jury.
Given the technical, and unfamiliar, nature of the subject matter of this action, the court properly determined that "it would be very unfair to submit this to the jury without any pictures." Of the diagrams that were specifically prepared to depict the surgery on Tina Robertson's wrist, it was a reasonable decision to admit the diagram that was described in testimony as an accurate depiction of the surgical field. The obviously argumentative portions of the diagram were removed. If that solution was not acceptable to the Robertsons, they were given the opportunity to reopen their case to authenticate their exhibit but chose not to take it. Finally, the record does not support their assertion that no other pictures were in the jury room. The trial court decisions, to admit McCue's diagram and to exclude the Robertsons', were not unreasonable, arbitrary, or unconscionable.
The Robertsons' first assignment of error is overruled.
 B. Demonstrative Photographic Evidence
The Robertsons have asserted that the trial court improperly excluded a photograph of a carpal tunnel release surgery that their expert witness had recently performed. The following exchange took place when they attempted to introduce the photograph.
 Q. You've seen this particular anomaly in surgery, correct?
A. Yes.
 Q. In fact, shortly after your deposition was taken you had the occasion to operate on someone like that, correct?
A. That's correct.
 Q. And today you brought to the courtroom a picture of that procedure, correct, of the patient?
A. You brought it.
 Q. I brought it, correct. You sent it to me and I brought it?
A. Right.
 Q. Could you please, doctor, describe how you feel that this photograph of the surgery you performed depicts what you believe the situation was with Tina Robertson?
MR. BANAS: Your Honor, I object.
THE COURT: Sustained.
 MR. CHAMBERLAIN: I'm not to show the picture, Your Honor?
THE COURT: Right.
The Robertsons did not further explore the reason the objection was made, or the reason the court sustained it, nor did they proffer the photograph that was excluded or the testimony they hoped to elicit about that photograph.[3]
The initial, most obvious reason for the objection and exclusion is that the photograph was never identified. The doctor was asked about whether he had performed a similar surgery. It was established that he had, that a photograph of that procedure had been sent to the Robertsons' attorney, and that the Robertsons' attorney had brought the photograph to the courtroom. Prior correspondence between an attorney and a witness, which resulted in a photograph being brought to court does not establish that the photograph about which questions are being asked is that photograph. On that basis alone, an objection was properly sustained when Dr. Green was asked "how * * * this photograph * * * depicts what you believe the situation was with Tina Robertson[.]"
In addition, as noted earlier one of the Robertsons' admitted exhibits contained numerous photographs and drawings of carpal tunnel release surgery. Absent a proffer of the excluded photograph, and the testimony that might have been elicited about it, the Robertsons have not established that the photograph would have added any information that was not already available to the jury. Because of this, the Robertsons have not established that they were prejudiced by the exclusion of the photograph, whether or not its exclusion was erroneous.
The Robertsons' second assignment of error is overruled.
 C. Use of Learned Treatises as Substantive Testimony
In Ohio, learned treatises may be used solely for purposes of impeachment. Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 110. "[T]he substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature." (Internal citation omitted.) Stinson v. England (1994),69 Ohio St.3d 451, paragraph two of the syllabus. Generally, it will be impossible to know whether an expert witness has relied upon a treatise, or acknowledged it as authoritative until after that witness has testified. The Supreme Court of Ohio carved out a narrow exception to this general rule in Ramage. In Ramage, the court held "that a party may, during the direct examination of its expert witness, inquire whether that expert agrees with the opinions expressed in publications by the adverse party's expert witness." Ramage, 64 Ohio St.3d at 110.
During the prosecution of their case, the Robertsons attempted to have their expert read a portion of a textbook into evidence. The textbook was not written by Dr. McCue or by Dr. McCue's expert witness. Later, during his cross examination, Dr. McCue acknowledged that, although he was "not sure of the definition of authoritative[, i]t's an excellent textbook."
When the Robertsons initially attempted to enter the substance of the treatise into evidence there had not been any testimony that Dr. McCue had either relied on the treatise or had recognized it as authoritative. Neither Dr. McCue, nor his expert witness, had written the treatise. The substance of the treatise was not admissible, at that point in the trial. Later, after Dr. McCue acknowledged that the treatise was an excellent textbook, the Robertsons were properly permitted to cross examine him on the substance of the treatise.
The limitations the trial court imposed on the Robertsons' use of the learned treatise were correct. The Robertsons' third assignment of error is overruled.
 D. Trial Court Bias
The Ohio Rules of Evidence direct the trial court to manage the presentation of evidence in order to "make the interrogation and presentation effective for the ascertainment of the truth [and to] avoid needless consumption of time[.]" Evid.R. 611(A). Part of that management is the ability to directly interrogate witnesses in an impartial manner. Evid.R. 614(B). "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." State ex rel. Wise v. Chand
(1970), 21 Ohio St.2d 113, paragraph three of the syllabus. If a party believes that the interrogation by the court is not impartial, or is for some other reason objectionable, the rules also provide a means for bringing that concern to the attention of the trial court at a time when any error can be corrected. Evid.R. 614(C) permits objections to judicial interrogation of witnesses to "be made at the time or at the next available opportunity when the jury is not present." "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus, certiorari denied (1969), 394 U.S. 1002,22 L.Ed.2d 779.
Here, the Robertsons have provided four instances in which they believe the court improperly questioned witnesses. No objections were made during the questioning by the court, and none were made at the next opportunity when the jury was not present. By failing to object at a time when the trial court could have corrected any error it might have made, the Robertsons waived the right to have this matter reviewed on appeal. See Metaullics Sys.Co. v., Molten Metal Equip. Innovations, Inc. (1996), 110 Ohio App.3d 367.
The Robertsons have also asserted that the court displayed bias in favor of Dr. McCue in its general control of the presentation of evidence and interrogation of witnesses. In addition to the incidents mentioned above in connection with the court's interrogation of witnesses, the Robertsons have cited four more incidents they believe demonstrate that the court was biased in its interactions with their counsel. They did not object to any of these incidents at the time they occurred, nor did they object later, outside the presence of the jury. As with most other errors, the complaining party must bring this matter to the attention of the court at a time when it will have the opportunity to correct an error by altering its conduct or by giving a correcting instruction to the jury. Armstrong v. Kittinger (Sept. 21, 1994), Summit App. Nos. 16124 and 16378, unreported, at 15-16, citing State v. Williams (1974), 39 Ohio St.2d 20, paragraph one of the syllabus. By their failure to object to judicial interactions they believed to be biased, the Robertsons have waived their right to have this court review the asserted error.Id.
The Robertsons' fourth assignment of error is overruled.
 III
The Robertsons' first assignment of error is overruled because the diagram the Robertsons sought to have admitted into evidence was not properly identified. The Robertsons' second assignment of error is overruled because the excluded photograph was never identified, and the Robertsons did not proffer the photograph or testimony that would permit this court to determine it was not merely duplicative of the photographs contained in exhibits that were admitted. The trial court properly limited the Robertsons' use of a textbook to impeachment; the Robertsons' third assignment of error is overruled. The Robertsons' fourth assignment of error is overruled because they failed to preserve the asserted error for review. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
WILLIAM R. BAIRD
FOR THE COURT SLABY, J.
BATCHELDER, J., CONCUR
[1] The Robertsons originally named the Crystal Clinic Surgery Center as a defendant, but voluntarily dismissed it prior to trial.
[2] The fourth and fifth errors assigned by the Robertsons have been combined. The fourth error, as assigned, addressed the concern about the bias of the trial court as it was manifested in the direct questioning by the trial judge of witnesses. The fifth error, as assigned, addressed a more general concern about judicial bias.
[3] It is clear from the transcript that the court requires that objections be made without elaboration. The practice of a particular court that the basis for objections must be made out of the hearing of the jury does not relieve a party from the responsibility of making an adequate record that will permit complete review of the assigned error. Absent evidence in the record to the contrary, the trial court will be presumed to have acted correctly. See Makranczy v. Gelfand (1924), 109 Ohio St. 325, paragraph one of the syllabus.